FILED
15-0215
4/29/2015 4:16:51 PM
tex-5089126
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

**No. 15-0215**

IN THE
**SUPREME COURT OF TEXAS**

CITY OF AUSTIN,
*Petitioner,*

vs.

HARRY M. WHITTINGTON, *ET AL.*,
*Respondents.*

*ON PETITION FOR REVIEW FROM THE
THIRD COURT OF APPEALS AT AUSTIN*

**REPLY TO RESPONSE TO PETITION FOR REVIEW**

Anne L. Morgan, Interim City Attorney
State Bar No. 14432400
Meghan Riley, Div'n Chief-Litigation
State Bar No. 24049373
CITY OF AUSTIN
P. O. Box 1088
Austin, Texas 78767-1088
(512) 974-2268
(512) 974-6490 fax

Renea Hicks
Law Office of Max Renea Hicks
State Bar No. 09580400
101 West 6th Street, Suite 504
Austin, Texas 78701-2934
(512) 480-8231
(512) 480-9105 fax
rhicks@renea-hicks.com

ATTORNEYS FOR PETITIONER CITY OF AUSTIN

## TABLE OF CONTENTS

Index of Authorities ....................................................................................ii

I. By statute, accrual of post-judgment interest is triggered only by a "money judgment," and the only money judgment in this case in 2013, not 2007.....1

    A. The plain words of Section 304.005(a) establish the 2013 judgment as the trigger for accrual of post-judgment interest. ....................................1

    B. The response's isolated quotes from this Court's opinions on other issues actually supports the City's argument about when post-judgment interest accrues..................................................................................3

    C. The City had no reason, no opportunity, and no authority to tender additional funds to the Whittingtons in 2007. .........................................4

    D. The response fails to distinguish *Long*'s core holding that there is only one final money judgment under Section 304.005(a). .............................5

    E. The response's other arguments on post-judgment interest are unavailing. ........................................................................................6

II. The City should have been credited with the interest that had accumulated on its deposited funds during the period the Whittingtons rejected the funds. ....................................................................................8

    A. *Shambry*'s holding is not about prejudgment interest under Section 304.201. ..................................................................................8

    B. *Shambry* is not countermanded by other authority cited in the response. 10

Conclusion....................................................................................................11

Certificate of Compliance .............................................................................12

Certificate of Service.....................................................................................13

**INDEX OF AUTHORITIES**

**Cases**

*American Paper Stock Co. v. Howard*, 528 S.W.2d 576 (Tex. 1975) ...................5

*Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410 (5th Cir. 2011) .......................11

*Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848 (Tex. 1980)...........................3

*Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785 (Tex. 1988) ...........3

*City of Houston v. Adams*, 154 Tex. 448, 279 S.W.2d 308 (1955) ......................3

*DiGiuseppe v. Lawler*, 269 S.W.3d 588 (Tex. 2008) ...........................................3

*Housing Authority of City of Dallas v. Shambry*, 252 S.W.2d 963 (Tex.Civ.
   App.—Austin 1952, writ ref'd n.r.e.) .............................................................9

*Long v. Castle Texas Production L.P.*, 426 S.W.3d 373 (Tex. 2014) ...................5, 6

*Mt. San Jacinto Community College Dist. v. Superior Court*, 151 P.3d
   1166 (Cal. 2007) .......................................................................................7

*Phillips v. Bramlett*, 407 S.W.3d 229 (Tex. 2013) ..............................................6

*Shambry v. Housing Authority of City of Dallas*, 152 Tex. 122, 255 S.W.2d
   184 (1953)........................................................................................8, 9, 10

*Sellers v. Harris County*, 483 S.W.2d 242 (Tex. 1972).......................................10

*Southern County Mutual Ins. Co. v. First Bank and Trust of Groves*,
   750 S.W.2d 170 (Tex. 1988) .......................................................................3

*State v. Hale*, 136 Tex. 29, 146 S.W.2d 731 (1941)............................................7

*State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799 (Tex. 2007)....................10

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980)..............10, 11

**Constitution and statutes**

Tex. Const. Art. III, § 52(a) .................................................................5

Tex. Fin. Code § 304.005(a) ...........................................................1, 2, 5,

Tex. Fin. Code § 304.201.................................................................8, 9, 10

## I. BY STATUTE, ACCRUAL OF POST-JUDGMENT INTEREST IS TRIGGERED ONLY BY A "MONEY JUDGMENT," AND THE ONLY MONEY JUDGMENT IN THIS CASE WAS IN 2013, NOT 2007.

### A. The plain words of Section 304.005(a) establish the 2013 judgment as the trigger for accrual of post-judgment interest.

The response does not address the crux of the postjudgment interest issue. This issue centers on a statute, Section 304.005(a) of the Finance Code. By its terms it asks whether the overturned 2007 judgment or the 2013 remand judgment is the trigger for accruing and calculating interest. The response does not discuss or even cite the statute. Yet, the statute's text[1] tells the Court nearly everything it needs to determine that the appeals court gave the wrong answer—and, accordingly, this reply starts with a discussion of the words of the statute.

Section 304.005(a) first specifies the type of judgment on which any postjudgment interest is to accrue. It is not just any judgment; it is, by the statute's terms, a singular event: "a *money* judgment." Next, the statute identifies the period during which interest runs on the money judgment. The period begins when "the judgment" is rendered. The phrase "the judgment" refers directly to the "money judgment." The period of interest ac-

---

[1] Omitting the cross-reference to subsection (b), which is not pertinent here, subsection (a) of Section 304.005 states: "[P]ostjudgment interest on a money judgment in a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied."

1

cumulation ends when "the judgment"—again, referring back to the key "money judgment" term— is satisfied. Everything turns on "a money judgment."

There is only one such judgment in this case. The only "money judgment" that Section 304.005(a) could possibly be referencing is the 2013 judgment. Until then, the City did not have title to the condemned property, and the Whittingtons did not have a money judgment awarding them compensation for the property. *Compare* 2013 judgment (App. B of City Pet. at 2-3 (vesting title), 3 (awarding compensation)) *with* 2007 judgment (App. E of City Pet. at 5 (denying City right to take and right of possession and not awarding compensation)).

Not only did the 2007 judgment not award a money judgment (the *sine qua non* for triggering accrual under Section 304.005(a)), it could not have done so and simultaneously give the Whittingtons the principal relief they were seeking: judicial denial of the right to take. Denying the right to take and awarding compensation for the taking are incompatible remedies and, if (as it did) the 2007 judgment denied the right to take, it could not (and did

not) also have made an alternative award of monetary compensation. *See* City Pet. at 13-14.[2]

## B. The response's isolated quotes from this Court's opinions on other issues actually support the City's argument about when post-judgment interest accrues.

This is a legally insurmountable problem for the Whittingtons' argument and their understandable response is to simply ignore the case law it rests on. They say nothing directly about the issue, but, instead, quote opinion snippets that do not deal with the post-judgment interest issue and, on examination, actually support the City's argument. Whittington Resp. at 3-4.[3] The *DiGiuseppe* quote says that a party is not required to turn to one of its alternative issues "until" it loses on appeal. The *Boyce Iron Works* quote is to the same effect, saying that a party may return to one of its alternative issues "if" it loses on appeal. And the theme continues with the *Bocanegra* quote, which says that, if a party first pursues an unfounded remedy and loses, it "then" can pursue another one. None of these quotes suggests that the party losing the first time through the appeals process (such as the Whittingtons)

---

[2] Citing *City of Houston v. Adams*, 154 Tex. 448, 279 S.W.2d 308, 312 (1955), and *Southern County Mutual Ins. Co. v. First Bank and Trust of Groves*, 750 S.W.2d 170, 173-74 (Tex. 1988)

[3] Quoting *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 603 (Tex. 2008); *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988); and *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 852 (Tex. 1980)

is to be allowed to retroactively start over and make its opponent pay the cost of its failure the first time up the appellate ladder. The key chosen words—"until," "if," "then"—all suggest that the start-up period for the new phase, pressing the new theory, begins *after* the first-round failure. That would mean that they couldn't return to 2007 as though the six years devoted to a losing theory never happened.

## C. The City had no reason, no opportunity, and no authority to tender additional funds to the Whittingtons in 2007.

The response also engages in another diversion—and an erroneous one at that. The City's problem, say the Whittingtons, is that in 2007 it "chose not to deposit" the additional amount in the jury verdict on compensation into the court registry "during the appeal of this case." Whittington Resp. at 2 (emphasis added); *see also id*. at 4 (last bullet point). Even were it correct, this point is immaterial to the post-judgment accrual date under Section 304.005(a). But the argument is also flawed on the point it tries to make.

Obscured by the argument's phrasing is a critical unconfronted fact. The 2007 judgment does not contain the higher compensation award the Whittingtons claim the City "chose" not to protectively deposit. The additional money was in a jury verdict, but, at the Whittingtons' request, the trial court declined to reduce the jury's compensation award to judgment. It has long

been the rule that a jury verdict does not trigger the running of post-judgment interest; only a *money judgment* does. *See, e.g., American Paper Stock Co. v. Howard*, 528 S.W.2d 576, 577 (Tex. 1975). The same rule holds true today under Section 304.005(a). It ties the accrual of interest to a money judgment, not to a jury verdict.

Nothing in governing law suggested a need or requirement for the City in 2007 to make an anticipatory tender of money to the Whittingtons that the Whittingtons positively didn't want and that the trial court acquiesced in not awarding them. Doing so would have been fiscally imprudent at the very least and possibly even unconstitutional. The Texas Constitution bars cities from granting public money to private individuals. *See, e.g.,* Tex. Const. Art. III, § 52(a). Tendering public money to a private individual when a court has refused to order an award of such money gives every indication of falling within this prohibition.

**D. The response fails to distinguish *Long*'s core holding that there is only one final money judgment under Section 304.005(a).**

The response fails to come to grips with the on-point holding in *Long v. Castle Texas Production L.P.*, 426 S.W.3d 73 (Tex. 2014), that, when there are multiple trial court judgments, postjudgment interest under Section 304.005(a) is based on "only one final judgment" which accrues from "a

money judgment's date." *Id.* at 75-76, 79. In choosing between *Long* and *Bramlett*,[4] the response would focus on the single question of whether new evidence was taken on remand. Whittington Resp. at 2-3. But that is looking at *Bramlett* from the wrong end and ignores the more fundamental holding in *Long* about a single, final money judgment. *Bramlett* allowed the party that won on appeal to get interest from the date of the judgment he tried to have rendered before a first appeal. It did not hold that the party responsible for the original erroneous judgment was to collect interest from the date of that party's own mistake.

### E. The response's other arguments on post-judgment interest are unavailing.

The response concludes its discussion of the postjudgment interest issue with three bullet points, each of which is mistaken in its argument. Whittingtons Resp. at 4. The third bullet point (that the City could have voluntarily deposited the extra jury verdict amount) has already been addressed and shown to be fundamentally wrong. *See* Part I.C, above. The second bullet point (that the City had to accept that it might have to pay interest on the jury's verdict if it took possession early) is flawed for the same reason. It is the

---

[4] 407 S.W.3d 229 (Tex. 2013)

money judgment, not the verdict on compensation, that triggers compensation, and there was no money judgment in this case until 2013.

The first bullet point also is wrong. It insinuates that full compensation includes, as a *constitutional*, the right of a landowner to postjudgment interest for the time the landowner is actively avoiding compensation and seeking to prevent the taking altogether. No authority is cited for this proposition, and there is none.

Unlike prejudgment interest,[5] postjudgment interest is not an element of constitutional just compensation. A landowner is legally free to forego the deposited sums and challenge the right to take, but there is no right to claim retroactive postjudgment interest while the landowner pursues that option. In a related context, the California Supreme Court unanimously held that there is no constitutional right to both the funds deposited to take possession and pursuit of a challenge to the right to take. *Mt. San Jacinto Community College Dist. v. Superior Court*, 151 P.3d 1166, 1176 (Cal. 2007). The court said that a landowner "cannot have it both ways." *Id*. at 1177. The same principle applies to the parallel situation here. The Whittingtons have no constitution-

---

[5] Prejudgment interest *is* an element of just compensation under the Texas Constitution. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731 (1941).

al right to challenge the right to take then claim interest that runs while they pursue the challenge to an unsuccessful conclusion.

## II. THE CITY SHOULD HAVE BEEN CREDITED WITH THE INTEREST THAT HAD ACCUMULATED ON ITS DEPOSITED FUNDS DURING THE PERIOD THE WHITTINGTONS REJECTED THE FUNDS.

### A. *Shambry*'s holding is not about prejudgment interest under Section 304.201.

As already explained, City Pet. at 18, the decision below awarding the interest that had accumulated on the City's deposits, tendering funds for the taking, to the Whittingtons instead of crediting it to the City conflicts with this Court's decision in *Shambry*.[6] With no supporting argument beyond an *ipse dixit*, the response mistakenly distinguishes *Shambry* by characterizing it as a ruling about prejudgment interest. Whittington Resp. at 5. But *Shambry* is directly on point in favor of the City's position on this issue. Shambry distinguishes between interest that accumulates on deposited funds (which does not inure to the benefit of a party such as the Whittingtons) and interest under Section 304.201 of the Government Code.

---

[6] 152 Tex. 122, 255 S.W.2d 184 (1953) (*per curiam*)

As detailed in the appeals court opinion in *Shambry*,[7] the condemnor (a city housing authority) had deposited funds ($3,850) into the registry of the court so it could take possession pending completion of the condemnation litigation. The jury verdict—reduced to judgment, in contrast to the 2007 jury verdict in this case—increased the compensation awarded by the special commissioners. 252 S.W.2d at 966. The appeals court held that the landowner was entitled to interest on the amount of this increase; however, it specifically held that no interest was allowable on the deposited sum. *Id.* This deposit, explained the court and re-emphasized on rehearing, constituted a "tender" to the landowner which "could have been withdrawn" at any time. *Id.* This Court's *per curiam* opinion specifically approved the latter holding. 255 S.W.2d at 185.

This recitation of *Shambry*'s actual facts refutes the response's mischaracterization of the interest on the deposited amount. The interest allowed on the amount of the increase was the prejudgment interest in the statutory sense of the term "prejudgment interest" used in the relevant statute, Section 304.201. This part of the lower court decision was not addressed in this Court's *per curiam* opinion. The interest *disallowed* on the deposited funds is

---

[7] 252 S.W.2d 963 (Tex.Civ.App.—Austin 1952, writ ref'd n.r.e.)

the equivalent of the interest that accumulated in this case on the City's deposited funds during the period the Whittingtons were trying to avoid the taking altogether.[8] *Shambry*'s clear holding is that the Whittingtons are not to be credited with that interest. That the appeals court nonetheless did so is in direct conflict with this Court's *Shambry* decision. Allowing the Whittingtons to recover both prejudgment interest on amounts above the deposited funds and the interest on the deposited funds (as to which interest is not allowable to the landowner) would be an unjustifiable double recovery here.

## B. *Shambry* is not countermanded by other authority cited in the response.

The response's discussion of other authorities beyond *Shambry* does not call *Shambry* into question. *Sellers v. Harris County*, 483 S.W.2d 242 (Tex. 1972), and *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799 (Tex. 2007), *see* Whittington Resp. at 5, are non-condemnation cases dealing with impleader and interpleader actions and deposits by non-parties to the lawsuits. That the Court held that the non-parties were not entitled to, or responsible for, interest on the deposited funds that were not theirs is both unsurprising and of no consequence to this case. *Webb's Fabulous Pharmacies, Inc. v. Beck-*

---

[8] Most of this interest accumulated before the 2013 judgment and, in that non-technical sense, accumulated "prejudgment." But it is not "prejudgment interest" as that statutory term of art is used in Section 304.201.

*with*, 449 U.S. 155 (1980), *see* Whittington Resp. at 6, likewise concerned disposition of interest in an interpleader action. 449 U.S. at 160. And, in contrast to the situation here, the claimants in that case had no right of access to the funds during the litigation's pendency.

The response's citation to *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410 (5th Cir. 2011), *see* Whittington Resp. at 6, is especially curious since *Arete* supports the City on the accumulated interest issue. Citing *Shambry*, the Fifth Circuit explained that interest "does not accrue on funds to which the plaintiff has access prior to the final judgment." 643 F.3d at 415.

## CONCLUSION

The Court should grant the City's petition for review and grant the City the relief prayed for. City Pet. at 21.

11

Respectfully submitted,

Anne L. Morgan, Interim City Attorney
Meghan Riley, Division Chief-Litigation
City of Austin
P. O. Box 1088
Austin, Texas 78767-1088
(512) 974-2268
(512) 974-6490 fax


___/s/ Renea Hicks_____
Renea Hicks
State Bar No. 09580400
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, Suite 504
Austin, Texas 78701-2934
(512) 480-8231
(512) 480-9105 fax
rhicks@renea-hicks.com

ATTORNEYS FOR PETITIONER
CITY OF AUSTIN

## CERTIFICATE OF COMPLIANCE

Based on the word count provided by the computer program used to prepare this petition, counsel states that the number of words in the pertinent pages of the document is 2,364.


_/s/ Renea Hicks_____
Renea Hicks

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Reply to Response to Petition for Review has been served through the electronic filing system on the following counsel of record on April 29, 2015:

John J. McKetta, III
Robert J. Hearon, Jr.
William Christian
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Ave., Suite 2200
Austin, Texas 78701.

_/s/ Renea Hicks_____
Renea Hicks